**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE: MATTER OF THE APPLICATION          CIVIL ACTION NO.
OF B&C HOLDING GMBH FOR AN
ORDER TO TAKE DISCOVERY               23-365-JWD-EWD
PURSUANT TO 28 U.S.C. § 1782 FROM
THE TEACHERS' RETIREMENT
SYSTEM OF LOUISIANA

## RULING AND ORDER[1]

Before the Court is the Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 ("Application"),[2] filed by B&C KB Holding GmbH ("B&C"). Per the Application, B&C seeks an order of this Court permitting it to "serve subpoenas for documents and testimony" on Respondent Teachers' Retirement System of Louisiana ("TRSL").[3] TRSL opposes the Application,[4] and B&C has filed a reply memorandum,[5] along with an October 3, 2023 letter advising the Court of a decision by the United States District Court for the Western District of Wisconsin granting in part and denying in part a similar § 1782 application.[6]

Considering the applicable statutory and discretionary factors, B&C's Application will be granted as to Document Request Nos. 1, 2, and 3, and will be denied in all other respects. TRSL's request that this matter be stayed pending disposition of an earlier application filed by B&C in the Southern District of New York will also be denied.

---

[1] A § 1782 application is not among the pretrial matters specifically excluded from direct ruling by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). Additionally, as a § 1782 application is a discovery tool, it does not appear to be a dispositive matter which would require a report and recommendation.

[2] R. Doc. 1.

[3] *Id.* at intro.

[4] R. Doc. 12.

[5] R. Doc. 17.

[6] R. Doc. 21. *See also In re Matter of the Application of B&C Holding GmbH for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 from the State of Wisconsin Investment Board*, No. 23-MC-6, 2023 WL 5974634 (W.D. Wisc. Sept. 14, 2023) (the "Wisconsin Application").

I.    BACKGROUND[7]

In 1936, the Louisiana legislature created TRSL to "provide retirement benefits and services to Louisiana teachers, retirees and employers."[8] Currently, TRSL is the "largest public retirement system in Louisiana."[9] TRSL "manages over $20 billion in assets on behalf of its members and diversifies its portfolio among thousands of individual investments in different classes of assets, such as stocks, bonds, cash, real estate, and private equity."[10]

In 2014, TRSL "committed less than 0.44% of its assets" in a private equity fund, the "LG Fund," making TRSL one of several passive, limited investors (or limited partners) in the LG Fund.[11] The LG Fund was "managed by an affiliate of [Lindsay Goldberg] & Co. LLC ("LG")," a New York City-based private equity firm, "under a Delaware limited partnership agreement."[12] Among other investments, LG Fund indirectly held an ownership stake in Atlas Flexibles Coöperatief U.A. ("AF Coop"), an excluded liability cooperative incorporated in the Netherlands.[13]

The issues in the Application largely relate to B&C's purchase from AF Coop and Lindsay Goldberg Europe GmbH ("LGE") of an 80% ownership stake in Schur Flexibles Group ("Schur"), a "private company located in Vienna, Austria,"[14] for €258.4 MM (~$300 MM).[15] According to

---

[7] The facts in this section are taken from B&C and TSRL's filings, and the attachments to those filings, and are largely undisputed. *See* R. Docs. 1, 12, 14, 17.

[8] R. Doc. 12, p. 8; R. Doc. 12-4, ¶ 3.

[9] R. Doc. 12, p. 8.

[10] R. Doc. 12, p. 8; R. Doc. 12-4, ¶ 4.

[11] R. Doc. 12, p. 8; R. Doc. 12-4, ¶¶ 5, 7-8.

[12] R. Doc. 12, p. 8; R. Doc. 12-4, ¶ 5.

[13] R. Doc. 12, p. 9; R. Doc. 12-4, ¶ 6.

[14] R. Doc. 1-4, ¶ 3. B&C is wholly, but indirectly, owned by B&C Privatstiftung, an "Austrian private foundation whose purpose is to promote Austrian entrepreneurship." *Id*.

[15] R. Doc. 1, ¶¶ 3, 48-53; R. Doc. 1-4, ¶ 4-14. Specifically, B&C acquired an 80% interest in Atlas Flexibles GmbH ("Atlas"), which directly owned 100% of Schur Flexibles GmbH ("SF"), which directly owned 100% of Schur Flexibles Holding GmbH ("SF Holding"). In turn, SF Holding directly or indirectly holds interest in numerous other affiliates. The Court will refer to Atlas and its various subsidiaries and affiliates collectively as "Schur" or the "Schur Flexibles Group." R. Doc. 1-4, ¶ 6.

B&C, it "discovered indications of misconduct at Schur" in late December 2021, which lead to several post-acquisition investigations.[16] Specifically, B&C contends that these investigations revealed evidence that three Schur executives—Michael Schernthaner, Michael Fischkin, and Conny Stöhrer—had misappropriated corporate funds and had artificially inflated Schur's 2018-2020 earnings on its financial statements, rendering B&C's investment in Schur "virtually worthless."[17] Based on its investigations, between March 2022 and July 2022, B&C filed several criminal complaints, including one filed against Schernthaner, Fischkin, and Stöhrer with the Austrian Central Public Prosecutor's Office for the Prosecution of Economic Crimes and Corruption ("Austrian Prosecutor") and another filed against Thomas Unger, the managing partner of LGE ("Unger"), with the Dusseldorf Public Prosecutor's Office ("Dusseldorf Prosecutor").[18] After accepting a request from the Dusseldorf Prosecutor to "take over the criminal investigation against Unger," the Austrian Public Prosecutor's office is currently investigating Schernthaner, Fischkin, Stöhrer, and Unger for suspicion of aggravated fraud, manipulation of financial statements, and other criminal misconduct that "induced B&C to acquire a controlling interest in Schur at an artificially inflated price" (the "Austrian Criminal Investigation").[19]

B&C claims that, as an alleged crime victim, it has the right under Austrian law to submit evidence in the criminal investigation, and the prosecutors must consider any evidence submitted by B&C.[20] B&C has already submitted evidence and intends to submit more to the Austrian authorities to ensure that the criminal investigation includes all potential crimes against B&C.[21]

---

[16] R. Doc. 1, ¶¶ 3-4, 54-57.

[17] R. Doc. 1, ¶¶ 54-57, 70; R. Doc. 1-5, ¶¶ 7-8.

[18] R. Doc. 1, ¶¶ 58-69; R. Doc. 1-5, ¶¶ 9-14.

[19] R. Doc. 1, ¶¶ 1, 58-69.

[20] R. Doc. 1, ¶¶ 14, 75-76; R. Doc. 1-5, ¶¶ 40-41.

[21] *Id*.

In July 2022, B&C filed a § 1782 application in the Southern District of New York, seeking discovery from LG and one its managing partners, Michael Dees, in connection with the criminal investigations being conducting by the Austrian Prosecutor.[22] Over LG and Dees' (collectively, the "SDNY Respondents") opposition, and after considering the three statutory requirements under § 1782, as well as the four discretionary factors (discussed below), that court granted B&C's application on February 6, 2023.[23] Specifically, the New York court found (1) that Dees was likely to have information relevant to the Austrian Prosecutor's criminal investigation because he was a managing director for a company that co-owned Schur at the time B&C purchased it,[24] and (2) that LG was also likely to have information relevant to the Austrian Prosecutor's criminal investigation because LG "owned 20% of [LGE]—the investment fund that purchased Schur in 2016 and then sold it to B&C in 2021," and, "[i]n connection with the purchase and sale of Schur…[LG] would presumably have performed due diligence on Schur."[25] The SDNY Respondents objected to the Magistrate Judge's February 6 ruling, but the District Judge overruled those objections.[26] The SDNY Respondents appeal of this ruling to the United States Second Circuit Court of Appeals remains pending.[27] To date, the SDNY Respondents have not responded to B&C's SDNY Application.

After failing to obtain any information directly from LG and/or Dees, B&C has filed several § 1782 applications in federal courts across the country seeking permission to obtain

---

[22] R. Doc. 1, ¶¶ 72-74; R. Doc. 12, pp. 7-8.

[23] *See In re B&C KB Holding, GmbH*, No. 22-mc-180, 2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023) (the "SDNY Application").

[24] *Id*. at *5. Indeed, Dees was identified as a "knowledge bearer" in some of the documents related to B&C's purchase of Schur. *Id*. at *5.

[25] *Id*. at *5.

[26] *See In re B&C KB Holding, GmbH*, No. 22-mc-180, 2023 WL 4544775 (S.D.N.Y. June 8, 2023).

[27] *B&C KB Holding, GmbH v. Goldberg Lindsay & Co. LLC,* No. 23-1014 (2nd Cir).

discovery from several limited, passive investors in the LG Fund, including TRSL.[28] Here, B&C

contends that, as an investor in the LG Fund, it expects TRSL to "possess information that is

relevant to, and that B&C can use in," the criminal investigation being conducted by the Austrian

Prosecutor,[29] because TRSL likely possesses "communications regarding its investment in the LG

Fund, which would likely include information concerning the reported value of Schur, as well as

the efforts by Schur's former owners to sell a controlling interest in it to B&C."[30] Relatedly, B&C

contends that TRSL is "also expected to have received a portion of, or have information

concerning, the Sale Proceeds paid by B&C, including the present whereabouts of monies it

received," which is relevant to the Austrian Prosecutor's investigation because "[p]roceeds

procured by criminal fraud can potentially be seized and subject to forfeiture under Austrian

law."[31] Specifically, B&C seeks an order of this Court requiring TRSL to produce documents and

to provide deposition testimony concerning the following topics related to Schur, which are

summarized as follows: (1) TRSL's communications with LG about Schur; (2) information

received from LG about Schur; (3) any due diligence that TRSL conducted or was privy to

concerning Schur's financials; (4) TRSL's knowledge of the employment, roles, responsibilities,

and conduct of Unger, Schernthanter, Fischkin, and Stöhrer; and (5) information showing TRSL's

profits or losses on the LG Fund related to LG's investment in Schur.[32]

    TRSL opposes B&C's § 1782 application.

---

[28] In addition to this Application and the Wisconsin Application, B&C has filed two other § 1782 applications seeking discovery from limited, passive investors in the LG Fund. *See* R. Doc. 12, p. 5, n. 4, referencing: *In re Matter of the Application of B&C Holding GmbH for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 from the New York State Common Retirement Fund*, No. 23-MC-14 (N.D.N.Y. May 11, 2023) ("NDNY Application"); *In re Matter of the Application of B&C Holding GmbH for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 from the Teacher Retirement System of Texas*, No. 23-MC-529 (W.D. Tex. May 11, 2023).
[29] R. Doc. 1, ¶ 1.
[30] R. Doc. 1, ¶ 6.
[31] *Id*.
[32] *See* R. Docs. 1-6 & 1-7.

II.        LAW AND ANALYSIS

    A.        **Applications for Discovery Under 28 U.S.C. § 1782**

"Section 1782 allows an interested party to a foreign proceeding to apply to a United States

district court in order to obtain discovery related to the foreign proceeding where the source of the

discovery is not a party to the foreign proceeding and can be found within the jurisdiction of the

district court."[33] Section 1782 states, in part:

> The district court of the district in which a person resides or is found may
> order him to give his testimony or statement or to produce a document or
> other thing for use in a proceeding in a foreign or international tribunal,
> including criminal investigations conducted before formal accusation. The
> order may be made…upon the application of any interested person and may
> direct that the testimony or statement be given, or the document or other
> thing be produced, before a person appointed by the court…To the extent
> that the order does not prescribe otherwise, the testimony or statement shall
> be taken, and the document or other thing produced, in accordance with the
> Federal Rules of Civil Procedure.[34]

"Generally, the Section 1782 analysis involves consideration of three threshold

jurisdictional requirements followed by consideration of four discretionary factors set out in *Intel*

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65, 124 S.Ct. 2466, 159 L.Ed.2d 355

(2004)."[35] The three statutory requirements that must be met before a district court may order

discovery under § 1782 are: "(1) the person from whom discovery is sought must reside or be

found in the district in which the application is filed; (2) the discovery must be for use in a

---

[33] *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 553 (5th Cir. 2012).
[34] 28 U.S.C. § 1782(a). As another court explained, "The history of section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States." *Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 193 (S.D. Tex. 1995). Further, discovery under § 1782 "promote[s] international dispute resolution and comity." *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013). *See also In re Solines*, No. 18-mc-3680, 2018 WL 2225134, *1 (E.D. La. Apr. 30, 2018).
[35] *Venequip, S.A. v. Mustang Machinery Company, LLC*, No. 21-mc-2391, 2022 WL 3951173, at *1 (S.D. Tex. Aug. 30, 2022), *aff'd* No. 21-mc-2391, 2023 WL 5531480 (5th Cir. Aug. 7, 2023).

proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or 'any interested person.'"[36] "This threshold showing merely 'authorizes, but does not require' the court to permit discovery; in other words, the decision is wholly discretionary."[37] Indeed, as the *Intel* Court "stressed," a "district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."[38]

Rather, once an application satisfies the three statutory requirements, "courts then look to four discretionary factors in deciding whether to exercise the authority conferred in Section 1782."[39] As the Fifth Circuit has explained, the *Intel* Court identified the following four factors that "should inform district courts' exercise of discretion" under § 1782:

(1) Whether the person from whom discovery is sought is a "participant in the foreign proceeding," such that the person, unlike a nonparticipant, is amenable to discovery in the foreign forum and the discovery may be unobtainable in that forum;

(2) The nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government or forum to U.S. federal court assistance;

(3) "[W]hether the 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions…"; and

(4) Whether the request is "unduly intrusive or burdensome."[40]

"[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal

[36] *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 Fed. Appx. 319, 322 (5th Cir. 2015), citing *Tex. Keystone*, 694 F.3d at 553 (citations omitted).
[37] *CFE Int'l LLC v. Antaeus Group LLC*, No. 23-56, 2023 WL 7181266, at *2 (W.D. Tex. Nov. 1, 2023), citing *Intel*, 542 U.S. 264-66.
[38] *Venequip*, 2022 WL 39511753, at *2, citing *Intel*, 542 U.S. at 264.
[39] *Venequip*, 2022 WL 3951173, at *2.
[40] *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F4th 469, 473 (5th Cir. 2022) (citations omitted).

courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"[41]

**B.      Analysis**

*1.      The Application Meets the Statutory Factors Under § 1782*

The Court's analysis begins with whether the following three statutory factors are met: "(1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or 'any interested person.'"[42]

There is no dispute that the first two statutory factors are met. B&C is an interested party in the Austrian Criminal Investigation, and TRSL—the party from whom discovery is sought—is in this judicial district.

The parties do, however, dispute whether the discovery B&C seeks is "for use" in Austrian Criminal Investigation. B&C contends that the "for use" factor is met because (1) § 1782 specifically authorizes discovery for private plaintiffs in criminal proceedings/investigations, and (2) that as the victim of the potential crimes under investigation by the Austrian Prosecutor, B&C has the "right" under Austrian law to submit evidence to the prosecutor, which it intends to do with any materials received in discovery from TRSL, *and* the Austrian Prosecutor is "obligated…to consider the evidence submitted by B&C."[43]

TRSL argues that the documents B&C seeks are not for use in the Austrian Criminal Proceedings for several reasons. First, TRSL argues that "B&C's application is a fishing

---

[41] *In re Solines*, 2018 WL 2225134, at *2, citing *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F3d. 77, 79 (2d Cir. 1997).
[42] *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 Fed. Appx. 319, 322 (5th Cir. 2015), citing *Tex. Keystone*, 694 F.3d at 553 (citations omitted).
[43] R. Doc. 1-1, at pp. 12-14.

expedition that is intended to harass a third-party with no connection to the Austrian criminal

investigation, and that seeks irrelevant information that is entirely duplicative of the information

B&C seeks in multiple Section 1782 applications pending across the country."[44] Second, TRSL

argues that B&C's requests related to the "sale proceeds" is not for use in the Austrian Criminal

Investigation because there is no evidence that the Austrian Prosecutor "has even contemplated

forfeiture of any assets in connection  with its investigation," and, to the extent that the Austrian

Prosecutor wants this information, it can request it "under the mutual legal assistance treaty

(MLAT) between the U.S. and Austria."[45] Third, TRSL argues that any document it received

related to its investment in the LG Fund likewise cannot be for use in the Austrian Criminal

Investigation because there is an "absence of any indication that TRSL has evidence of *criminal*

misconduct or that the Austrian prosecutor is interested in any information in TRSL's

possession."[46] Finally, TRSL argues that the timing of B&C's § 1782 application suggests that

B&C "does not seek discovery for use in the Austrian investigation, but instead [intends] to harass

LG by pursing its investors with vexatious and frivolous litigation"[47] and/or to "collect discovery

in connection with its pending private arbitration against AF Coop and LGE in Germany."[48]

Despite TRSL's arguments, many of which relate to the discretionary factors and are

discussed below, all B&C must do to satisfy the "for use" factor is to make a *de minimis* showing

that the discovery it seeks is "for use" in the foreign proceeding.[49] B&C has made more than a *de*

---

[44] R. Doc. 12, p. 13.
[45] *Id*. at 14-16.
[46] *Id*. at pp. 17-20.
[47] *Id*.
[48] *Id*. at p. 24
[49] *In re Application of HydroDive Nigeria, Ltd.*, No. 13-mc-477 , 2013 WL 12155021, at *3 (S.D. Tex. May 29, 2013) (discussing the "for use" factor and noting that the "burden imposed on the applicant on this issue is *de minimis*"). *See also In re B&C KB Holding GmbH*, 2023 WL 5974634, at *3 (W.D. Wisc. Sept. 14, 2023) (explaining that "applicants need only made a *de minimis* showing that the  requested discovery is 'for use' in the proceeding, so long as the proceeding falls within the scope of § 1782"); *In re B&C KB Holding GmbH*, 2023 WL 1777326, at *5 (S.D.N.Y. Feb. 6, 2023) (noting, "As other courts in this Circuit have made clear, an applicant need make only a *de minimis*

*minimis* showing here. Indeed, subject to Rule 11 and/or penalty of perjury, B&C, through counsel

in this case and Austrian counsel, has stated its intent to use whatever discovery it obtains from

this § 1782 application in the Austrian Criminal Investigation,[50] and it has shown that it has a

means of submitting that information for consideration in that investigation.[51] TRSL's conclusory

statements disputing B&C's intent are not sufficient to overcome B&C's showing.

B&C is an "interested party" to the Austrian Criminal Investigation, who is seeking

information from TRSL, an entity located in this judicial district, for use in the Austrian Criminal

Investigation. Accordingly, as have all other courts who have considered B&C's § 1782

applications against limited, passive investors of the LG Fund, this Court finds that all three

statutory factors under § 1782 are met.

### 2.    Consideration of the Intel Discretionary Factors

Because all three statutory factors under § 1782 are met, the Court next considers whether

the four discretionary factors identified by the *Intel* court: (1) whether the person from whom

discovery is sought is a "participant in the foreign proceeding," such that the person, unlike a

nonparticipant, is amenable to discovery in the foreign forum and the discovery may be

unobtainable in that forum; (2) the nature of the foreign tribunal, the character of the foreign

proceedings, and the receptivity of the foreign government or forum to U.S. federal court

---

showing that the information sought is 'for use' in a reasonably contemplated criminal foreign proceeding" (internal
quotations and citations omitted); *In re Veiga*, 746 F.Supp.2d 8, 18 (D.D.C. 2010) (collecting cases).
[50] R. Doc. 1, ¶ 81, R. Doc. 1-5, ¶¶ 40-44.
[51] In *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d. Cir 2017), the Second Circuit "held that § 1782(a) requires
an applicant to establish that it 'has the practical ability to inject the requested information into a foreign proceeding
because 'for use' means that the requested discovery is 'something that will be employed with some advantage or
serve some use in the proceeding.'" *In re Empresa Pública De Hidrocarburos Del Ecuador – EP Petroecuador v.
Worleyparsons Int'l, Inc.*, No. 19-mc-2534, 2020 WL 13412872, at * (S.D. Tex. Apr. 13, 2020) (discussing *Accent
Delight*) (internal quotations omitted). While the Fifth Circuit has not yet adopted the holding in *Accent Delight* (or
made a similar holding in a § 1782 case), such a requirement would be met here where B&C has shown that it can
provide information to the Austrian Prosecutor, who must consider that information under Austrian law.

assistance; (3)whether the 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions…; and whether the request is "unduly intrusive or burdensome.

a.    *TRSL is Not a Participant in the Austrian Criminal Proceeding*

As the *Intel* court explained, "Nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach," such that the need for assistance under § 1782 is more apparent.[52] But, a court may infer harassment if a party that could obtain discovery in the foreign jurisdiction also seeks discovery in a federal district court under § 1782 thereby "gratuitously forcing his opponent to proceed in two separate court systems."[53]

It is undisputed that TRSL is not a participant in the Austrian Criminal Investigation. Nonetheless, TRSL argues that B&C does not need assistance under § 1782 because B&C can get the same information from some other source much closer to the actual sale of Schur, be that from the individuals under investigation by the Austrian Prosecutor, the SDNY Respondents, or the respondents in the other § 1782 applications filed by B&C.[54] To the extent TRSL is arguing that B&C's requests are duplicative, that argument is discussed in the context of the fourth factor—intrusiveness and burdensomeness.

TRSL's arguments with respect to the first factor are not persuasive for several reasons. First, and most importantly, TRSL—as it acknowledges—is not a participant in the Austrian Criminal Proceedings.[55] Because of this, B&C cannot obtain the requested information from TRSL in the Austrian Criminal Investigation, nor is B&C subjecting TRSL to litigation in two separate court systems. Relatedly, other potential sources of the information sought in the Application, such

---

[52] *Intel*, 542 U.S. at 264.
[53] *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593-94 (7th Cir. 2011). *See also In re B&C KB Holding GmbH*, 2023 WL 5974634, at * 5, quoting *Heraeus*.
[54] R. Doc. 12, pp. 20-21.
[55] *See* R. Doc. 12, p. 20 ("True, TRSL is not a participant in the Austrian criminal investigation, which ordinarily favors granting the application.").

11

as LG and Dees, are also not participants in the Austrian Criminal Proceeding, which is presumably why B&C resorted to filing the SDNY Application against LG and Dees. Finally, TRSL's argument that B&C's need for § 1782 assistance is "lessened" because the information it seeks is "expected to be in the possession of…participants in the foreign proceeding" is not persuasive. As the Western District of Wisconsin noted, "It is beyond unlikely that the targets of the criminal investigation—Unger, Schernthanter, Fischkin, and Stöhrer—will voluntarily provide information that might show overvaluation or inflation of Schur's assets and earnings, nor would they possess documents showing [TRSL] or LG's due diligence or receipt of sales proceeds with respect to Schur."[56] Further, there is no information before the Court that the information sought in the Application has already been provided to the Austrian Prosecutor. Accordingly, the first *Intel* factor weighs in favor of granting the Application.

> b.    The Austrian Prosecutor's Receptivity to § 1782 Assistance in the Criminal Investigation

The second *Intel* factor considers the nature of the foreign proceeding and whether the foreign government/agency would accept assistance from federal district courts.[57] TRSL's argument that this factor weighs against granting the application is two-fold.[58] First, TRSL argues that B&C's § 1782 application is "devoid of even a single allegation that the Austrian [P]rosecutor has any interest whatsoever in the information that B&C now seeks from TRSL," which weighs against the granting of the application.[59] Second, TRSL argues that if the Austrian Prosecutor wanted this information, it could have already obtained it (considering that it has "engaged in extensive discovery") or could obtain it in the future by filing its own § 1782 application.[60]

---

[56] *In re B&C KB Holding GMBH*, 2023 WL 5974634, at *5-6.
[57] *Intel*, 542 U.S. at 264.
[58] R. Doc. 12, p. 21-23.
[59] R. Doc. 12, p. 22.
[60] *Id*.

Both of TRSL's arguments miss the point. Contrary to TRSL's assertion, the test is not whether the Austrian Prosecutor wants the information B&C seeks. Instead, the test is whether the Austrian Prosecutor would be receptive to assistance from the federal district court. As multiple courts have explained, the second *Intel* factor generally weighs in favor of granting the § 1782 application unless there is some "authoritative proof" or "clear directive" that the foreign government/agency would oppose the assistance.[61] Beyond TRSL's conjecture that the Austrian Prosecutor would not be receptive to this information because it has not sought such information itself, TRSL has not provided the Court with any indication that the Austrian Prosecutor would not be receptive to this information, much less with "authoritative proof" or a "clear directive" that the Austrian Prosecutor would oppose such assistance. Further, requiring the Austrian Prosecutor (or any foreign government/agency) to file a § 1782 application would effectively read out the phrase "any interested party" from the statute.

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

c.     *B&C Does Not Appear to be Attempting to Circumvent Austrian Proof-Gathering Requirements*

The third *Intel* factor looks at whether § 1782 applicant is attempting to use the § 1782 to circumvent the foreign tribunal's discovery procedures.[62] TRSL argues that B&C's Application is an attempt to circumvent the proof-gathering requirements of the Austrian Criminal Investigation,

---

[61] *See, e.g.*, *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (noting that "[i]n our view, however, to avoid 'speculative foray[s] into legal territories unfamiliar to federal judges,' parties must provide 'authoritative proof' that a foreign tribunal would reject evidence because of a violation of [an] alleged [foreign] privilege"; but explaining that "although the plaintiffs have submitted an affidavit from an Ecuadorian attorney suggesting that the discovery sought by Chevron would not be available in Ecuador, they have not pointed to any 'judicial, executive or legislative declaration' that clearly demonstrates that allowing discovery in this case would offend Ecuadorian judicial norms." (internal quotations and citations omitted); *In re Solines*, 2018 WL 2225134, at *2 & n. 4. *Cf. In re Venequip, S.A.*, 2022 WL 834780, at *8-9 (E.D. La. Mar. 21, 2022) (finding the second discretionary factor neutral and noting that there "appears to be a circuit split as to who bears the burden to show that the foreign tribunal would be receptive to the proposed discovery").
[62] *Intel*, 452 U.S. at 264-65.

as well as a "clear attempt by B&C to evade the Supreme Court's restrictions on its ability to obtain discovery in the private commercial arbitration still pending in Germany."[63] It further argues that because B&C is a "self-proclaimed victim" under the Austrian criminal code, it could have—but apparently did not—request that the Austrian Prosecutor pursue the evidence it now seeks through the Application.[64] TRSL contends that B&C failure to "avail itself of the discovery rules already available under Austrian law weighs against granting the [§ 1782] application."[65]

TRSL's argument that a § 1782 applicant must exhaust all discovery options available to it in the foreign proceeding before asking for assistance from a U.S. federal district court lacks statutory support. Indeed, TRSL has not identified, nor has the Court's own research located, any authority that suggests § 1782 contains an exhaustion requirement.[66] Similarly, as with the second factor, this argument would effectively read "any interested person" out of § 1782.[67] Finally, beyond its speculation, TRSL has provided the Court with nothing to suggest that the real purpose of B&C's § 1782 application is to obtain information to use in the German arbitration. Even if TRSL had, there appears to be no requirement in § 1782 that the information obtained must be used *exclusively* for the foreign proceeding.[68]  Regardless, B&C, through counsel, has stated (subject to Rule 11 and penalty of perjury), that B&C intends to use whatever information it receives from this Application in this Austrian Criminal Investigation.

---

[63] R. Doc. 12, pp. 23-25.
[64] *Id.*
[65] *Id.*
[66] *See also In re B&C KB Holding GMBH*, 2023 WL 5974634, at *6 (finding that § 1782 does not have an exhaustion requirement).
[67] *See id.*
[68] Indeed, the Southern District of New York rejected a nearly identical argument advanced by LG and Dees. *See In Re. B&C KB Holding GmbH*, 2023 WL 1777326, *7 ("In any case, 'provided the statutory and discretionary criteria are satisfied, as they are here, a Section 1782 application should not be denied merely because the discovery material may have potential other uses by the [applicant].'" (citations omitted).

Accordingly, the third *Intel* discretionary factor weighs in favor of granting the Application.

> d.    *Rule 26 Concerns Weigh in Favor of Limiting the Information B&C Seeks*

The final *Intel* factor looks at whether the requested discovery is unduly burdensome or overly intrusive.[69] In assessing the scope of the discovery sought through a § 1782 application, courts apply the Federal Rules of Civil Procedure, including weighing proportionality and undue burdensomeness under Rules 26 and 45.[70] Indeed, § 1782 applicants are "not entitle[d]…to unbridled discovery."[71] Any "unduly intrusive or burdensome requests may be rejected or trimmed."[72]

Although interlaced throughout its briefing, many of TRSL's arguments against granting the Application focus on this *Intel* factor. To summarize, TRSL contends that B&C's Application is duplicative of information sought via other § 1782 applications and unduly burdensome because (1) TRSL was simply a limited, passive investor in the LG Fund, who had nothing to do with the Schur sale and has nothing to do with the Austrian Criminal Investigation; and (2) B&C's requests are overbroad in both scope and time.[73] Relatedly, TRSL complains that B&C's Application is a "fishing expedition" filed to "harass TRSL."[74]

Generally, the party opposing discovery bears the burden of showing specific evidence that complying with discovery will be cost- or labor-intensive. TRSL has not provided the Court with any such evidence here. But that is not to say that all TRSL's burdensomeness arguments are

---

[69] *Intel*, 542 U.S. at 265.
[70] *Venequip*, 2022 WL 834780, at *11.
[71] *In re B&C KB Holding GmbH*, 2023 WL 5974634, at *7.
[72] *Intel*, 542 U.S. at 265 (citations omitted).
[73] R. Doc. 12, pp. 25-29.
[74] *Id*.

without merit. As TRSL points out, it was a limited, passive investor in the LG Fund, who had

nothing to do with the Schur sale and who is not significantly connected to the Austrian Criminal

Prosecution. Indeed, save the individuals for whom TRSL (or the other limited, passive investors)

hold funds and make investments, the Court is hard-pressed to find less connection to the Schur

sale or the alleged fraud being investigated. Further, as TRSL notes, the information sought in the

Application is similar (or identical) to the information sought from LG and Dees through the

SDNY Application, and it is likely that, to the extent TRSL has responsive information to some of

B&C's request, that information would have come from LG. However, as the Western District of

Wisconsin noted, "[TRSL] never would have been dragged into the Austrian proceeding but for

LG and Dees' stonewalling in SDNY."[75]

B&C alleges that is has incurred a loss of hundreds of millions of dollars because of alleged

fraud in its purchase of Schur.  As such, B&C has articulated a "compelling interest in presenting

all relevant evidence concerning the sale of Schur to B&C to the Austrian prosecutor before

charging decisions are made, an opportunity that may be lost if it waits for the conclusion of

proceedings in SDNY."[76] Further, TRSL has not shown that B&C's Application was filed in bad

faith or for the purpose of harassing limited, passive investors in the LG Fund, like TRSL. It is

important to note that B&C did not start the search for information it believes may be relevant to

the Austrian Criminal Investigation with limited, passive investors.[77] But, given that LG and Dees

have yet to respond to the SDNY Application, despite an order from the district court to do so, it

is reasonable that B&C would expand its search to TRSL and similar investors in the hopes of

---

[75] *In re B&C KB Holding GmbH*, 2023 WL 5974634, at *7.
[76] *Id.*
[77] TRSL's argument that the "delayed timing" of B&C's Application, over a year after the Austrian investigation began, suggests that B&C does not intend to use the information sought in the Application in the Austrian Criminal Proceedings (R. Doc. 12, p. 19), seems contrary to TRSL's argument that B&C should have waited even longer (until final resolution of the SDNY Application), before proceeding against limited passive investors.

obtaining relevant information.[78] It is fair to say that, "[t]o the extent this is unfair to [TRSL], LG is as much to blame as B&C."[79]

After considering the parties' arguments, and weighing their competing interests, this factor weighs in favor of granting a narrowed Application. B&C's Document Request Nos. 1, 2, and 3[80] will be granted, as they seek information relevant to the Austrian Criminal Investigation, and should not involve large numbers of documents, which should be relatively easy to locate. B&C's Document Request Nos. 4, 5, and 6 will be denied because "requiring [TRSL] to tease out what monies might have flowed to it from the Schur sale is not proportional to the needs of the case and it would be unduly intrusive on [TRSL] at this early stage of the Austrian [Criminal Investigation]."[81] The Austrian Prosecutor has not yet charged anyone with fraud, much less quantified the financial impacts of that fraud, and the possibility of an asset forfeiture proceeding against a limited, passive (and remote) investor, like TRSL, is simply too remote and speculative to permit discovery on these topics at this time.[82] Lastly, considering TRSL's "tangential connection to the Schur sale, its very limited investment in the LG Fund, and the likelihood that relevant information in [TRSL's] possession likely originated with LG,"[83] B&C's request to depose a representative of TRSL will also be denied.

Because a narrower version of B&C's Application will be granted, TRSL's request to stay B&C's Application pending the resolution of the SDNY Application will be denied.  B&C has a

---

[78] B&C did not file this Application until May 12, 2023, three months after a magistrate judge in the Southern District of New York granted B&C's §1782 application in that court and authorized B&C to serve subpoenas on LG and Dees, but before LG and Dees' objection to that order had been ruled on.  As noted, above, the district judge overruled the objections in June 2023 and LG and Dees appealed, which appeal remains pending.

[79] *Id*.

[80] R. Doc. 1-6, p. 13.

[81] *Id*. at *8.

[82] Much of TRSL's overbreadth argument relates to B&C's requests for information related to sales proceeds from the Schur sale.  This Ruling and Order does not permit B&C to obtain that information at this time.

[83] *Id*.

compelling interest in gathering information to present to the Austrian prosecutor before decisions are made about criminal charges, which opportunity could be lost if B&C is forced to wait for conclusion of the proceedings in the Southern District of New York, particularly given that LG and Dees have elected to appeal that Court's order requiring LG and Dees to respond to B&C's § 1782 application, such that the time table for final resolution of that decision is uncertain.

## III.   CONCLUSION & ORDER

B&C's Application meets all three statutory factors under § 1782, and the discretionary *Intel* factors weigh in favor of granting a more restricted Application. Accordingly,

**IT IS ORDERED** that the Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782,[84] filed by Applicant B&C KB Holding GmbH is **GRANTED IN PART and DENIED IN PART**. B&C's Application will be **GRANTED** as to Document Request Nos. 1, 2, and 3, and will be **DENIED** in all other respects. B&C is authorized to issue and serve a subpoena requesting the information contained in Document Request Nos. 1, 2, and 3 to Respondent Teachers' Retirement System of Louisiana.

**IT IS FURTHER ORDERED** that Respondent Teachers' Retirement System of Louisiana request to stay this proceeding pending final resolution of B&C's earlier filed SDNY Application is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 24, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[84] R. Doc. 1.